**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SEAN ARNOLD, #B7516, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KIMBERLY BUTLER, )<br>S.A. GODINEZ, )<br>TERRI ANDERSON, )<br>SHERRY BENTON, )<br>M HOF, )<br>ILLINOIS DEPARTMENT OF )<br>CORRECTIONS, )<br>WEXFORD HEALTH SERVICES INC., )<br>JOHN DOE 1, and )<br>JOHN DOE 2, )<br>)<br>Defendants. ) | Case No. 17−cv–079−SMY |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Sean Arnold, an inmate in Illinois River Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Amended Complaint, Plaintiff claims that the defendants failed to protect him from an attack by another inmate while he was incarcerated at Menard Correctional Center ("Menard") and were deliberately indifferent to his serious medical needs arising from the attack, in violation of the Eighth Amendment. (Doc. 6). This case is now before the Court for a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

1

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
    (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Amended Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## The Amended Complaint

In his Amended Complaint (Doc. 6), Plaintiff makes the following allegations: Plaintiff was convicted of aggravated criminal sexual assault and is serving a 20-year prison sentence. (Doc. 6, p. 6). He was transferred from Lawrence Correctional Center to Menard on October 22, 2014. *Id.* Upon his transfer to Menard, Plaintiff was housed with inmate Reliford, also known as Trey-9. *Id.* Reliford eventually discovered, potentially through seeing Plaintiff's trial transcripts in the cell, that Plaintiff was convicted of sexually assaulting Reliford's cousin. *Id.* On October 26, 2014, Plaintiff witnessed Reliford give orders to members of his gang, the

Gangster Disciples, to attack and kill Plaintiff on sight. *Id.* Plaintiff attempted to reason with Reliford, but Reliford told him: "If you speak to me again, I'll kill you myself." *Id.*

The next day, Plaintiff wrote a request to Internal Affairs / Placement to alert staff of the threats made to his life and to request to be moved away from Reliford because he feared for his safety. (Doc. 6, p. 7). On October 29, 2014, Plaintiff received a response from Internal Affairs Officer M. Hof stating that Reliford was not on his enemy list. *Id.* For several days, Plaintiff remained in fear for his life, until Reliford was released from segregation and sent to general population. *Id.* Plaintiff was eventually released from segregation on December 29, 2014. *Id.* He immediately requested protective custody and was denied by Warden Kimberly Butler on January 9, 2015. *Id.*; (Doc. 6-1, p. 9). Plaintiff grieved the denial to the Administrative Review Board ("ARB"), but Director S.A. Godinez and ARB Chairperson Terri Anderson "excluded facts about Plaintiff Arnold's conviction of aggravated criminal sexual assault in order to deny Plaintiff's grievance." (Doc. 6, p. 7).

Despite Plaintiff's requests for protective custody and separation from the Gangster Disciples gang because they "had a hit out on him," on February 13, 2015, Plaintiff was moved into the same cell as inmate Ware, who was known to be a violent member of the Gangster Disciples gang. (Doc. 6, pp. 7, 12). Ware threatened Plaintiff, and Plaintiff immediately informed prison staff, including Hof and Placement Officer John Doe ("John Doe 2"), about these threats made to his life, and he requested to be moved. *Id.* On February 14, 2015, Plaintiff was assaulted with a "homemade" weapon, stabbed in the head and face, and beaten in the head with an electric fan. (Doc. 6, p. 7); (Doc. 6-1, pp. 3-7). His request to be moved was denied by Hof on February 15, 2015. (Doc. 6, pp. 7, 12); (Doc. 6-1, p. 19). In his response to Plaintiff's request, Hof noted that Ware was not on Plaintiff's list of enemies. (Doc. 6, p. 12). Plaintiff did

not receive a response from John Doe 2.

From February 16, 2015 to April 20, 2015, Plaintiff made numerous requests for medical attention via inmate medical requests and verbal requests to staff to receive treatment for painful headaches, memory loss, and dizziness. (Doc. 6, pp. 7-8). These requests for medical attention were denied. (Doc. 6, p. 8).

Elaborating on his claims against certain defendants, Plaintiff alleges as follows: Butler "had full knowledge that [Plaintiff] was requesting protection from the Gangster Disciple Gang and . . . that placing [Plaintiff] in the same cell with inmate Ware, who is a known Gangster Disciple and violent inmate, would result in [Plaintiff] being assaulted by inmate Ware." (Doc. 6, p. 9). Further, Butler had a "customary practice of denial of protection" unless the inmate in question has listed his potential assailant on his list of enemies. *Id.*

The Illinois Department of Corrections ("IDOC") has a "customary practice," along with its ARB employees, of regularly excluding key information when deciding grievances for protective custody. (Doc. 6, p. 10). Godinez "promulgated, adopted and/or put into effect the customary practice of [IDOC] to regularly exclude key information when deciding grievances for protective custody, as an effective tactic to deny grievances." *Id.* Anderson and Sherry Benton, a member of the ARB, adopted this practice. *Id.* "The exclusion of any mention of [Plaintiff's] conviction of aggravated criminal sexual assault is indicative of" this practice, because Plaintiff believes it was essential to Plaintiff's grievance for protective custody placement. (Doc. 6, p. 11); *see also* (Doc. 6-1, p. 16). February 4, 2015 was the hearing date for Plaintiff's ARB grievance, which was ten days before he was attacked. (Doc. 6, p. 11).

Wexford Health Services Inc. ("Wexford") and Health Care Administrator John Doe ("John Doe 1") provide medical care to the inmates at Menard. (Doc. 6, p. 13). At the times

4

relevant to the Amended Complaint, Wexford maintained a policy and practice of denying "medical attention to inmates who complain of any effects from head trauma, or injuries to the head, as a means of saving costs." *Id.* Plaintiff made many requests for medical attention, but they were ignored. *Id.*; (Doc. 6-1, p. 13). John Doe 1 and Wexford "were deliberately indifferent to [Plaintiff's] medical needs when employees of [Wexford] ignored [Plaintiff's] request for medical care," and this deliberate indifference caused Plaintiff to suffer medical injuries. (Doc. 6, pp. 13-14).

Plaintiff seeks monetary damages from the defendants. (Doc. 6, p. 15).

## Discussion

Based on the allegations of the Amended Complaint, the Court finds it convenient to divide the *pro se* action into 4 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Butler failed to protect Plaintiff from a violent attack by his cellmate in violation of the Eighth Amendment after receiving a grievance notifying her of potential danger to Plaintiff.
>
> **Count 2 –** Godinez, Anderson, and Benton failed to protect Plaintiff from a violent attack by his cellmate in violation of the Eighth Amendment by denying a grievance from him requesting protective custody.
>
> **Count 3 –** Hof and John Doe 2 failed to protect Plaintiff from a violent attack by his cellmate after Plaintiff informed them of the danger he faced, in violation of the Eighth Amendment.
>
> **Count 4 –** Wexford and John Doe 1 showed deliberate indifference to Plaintiff's serious medical need involving injuries to his head in violation of the Eighth Amendment.

As discussed in more detail below, Counts 1 through 4 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered

5

dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

### Count 1 – Butler Failure to Protect

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "A generalized risk of violence is not enough, for prisons are inherently dangerous places." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (citing *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005); *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Further, it is well established that "[f]or constitutional violations under § 1983 ... a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. June 5, 2015). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated

the Constitution." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781-82 (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.")). "In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Perez*, 792 F.3d at 782.

In this case, Plaintiff alleges that he sent a grievance to Butler regarding the danger he was in, but she denied it based on her policy of denying requests for protective custody unless the person threatening an inmate is included on his enemies list. Plaintiff further alleges that Butler knew about Plaintiff's problems with the Gangster Disciples gang and that placing him with Ware would endanger him, but failed to prevent the placement and the attack that resulted. Based on these alleged facts, at this early stage, Plaintiff has stated a sufficient failure to protect claim against Butler. Therefore, Count 1 will be allowed to proceed.

### Count 2 – Godinez, Anderson and Benton Failure to Protect

The same standard applied to Plaintiff's claim against Butler applies to Plaintiff's failure to protect claim against Godinez, Anderson and Benton. Plaintiff alleges that Godinez perpetuates a practice of excluding key information when deciding grievances for protective custody, and that Anderson and Benton follow this policy. Plaintiff also asserts that the information regarding his conviction for criminal sexual assault was essential to his grievance for

7

protective custody, but that it was not mentioned in the explanation for the denial of his grievance. This denial, notably, was signed by Anderson and concurred to by Godinez after a hearing on the issue on February 4, 2015. (Doc. 6-1, p. 16). Plaintiff's statement to the ARB for the hearing included the allegation that the Gangster Disciples had a hit on Plaintiff and that he had been threatened. *Id.*

At this juncture, the allegations are sufficient to allow Plaintiff's failure to protect claim against Anderson and Godinez to proceed. Anderson seemingly had the opportunity to protect Plaintiff from attack because Plaintiff informed her of the details of the danger he faced at his hearing 10 days before he was attacked. Plaintiff also claims that Godinez perpetuated a policy that ultimately resulted in the denial of his grievance seeking protective custody. This is sufficient to state a claim against Godinez under the applicable pleading standards because allegations that an agency's senior officials were personally responsible for creating the policies, practices or customs that caused a constitutional deprivation suffice to demonstrate personal involvement. *Childress v. Walker*, 787 F.3d 433, 440 (7th Cir. 2015); *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002).

Plaintiff's allegations against Benton do not sufficiently connect Benton with the alleged constitutional deprivations, however. Plaintiff merely alleges that Benton adopted the policy perpetuated by Godinez. There is no indication in the Amended Complaint that her doing so affected Plaintiff in any way or that she was even aware of the danger Plaintiff was in prior to the attack.

For the foregoing reasons, Count 2 will proceed against Godinez and Anderson but will be dismissed without prejudice as to Benton.

## **Count 3 – Hof and John Doe 2 Failure to Protect**

Plaintiff's failure to protect claims against Hof and John Doe 2 state a claim upon which relief may be granted under the lenient pleading standard articulated in *Twombly*. Plaintiff alleges that he informed both Hof and John Doe 2 of the impending attack by Ware and the threats that he had received from him and the Gangster Disciples. He also alleges that neither Hof nor John Doe 2 took any actions to prevent the attack, which occurred the next day. Count 3 will therefore proceed against Hof and John Doe 2.

### Count 4 – Wexford and John Doe 1 Deliberate Indifference

A prisoner raising a claim against a prison official for deliberate indifference to his serious medical needs must satisfy two requirements. The first requirement compels the prisoner to meet an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

The second requirement involves a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297). Liability under the deliberate-indifference standard requires more than negligence, gross negligence or even recklessness. It is satisfied only by conduct that approaches intentional wrongdoing, *i.e.*, "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."

*Farmer*, 511 U.S. at 835.

Plaintiff alleges that he suffered from painful headaches, memory loss and dizziness as a result of trauma to his head sustained during the attack on February 14, 2015. This pain and suffering allegedly lasted at least from the day of the attack, February 14, 2015, until April 20, 2015, when Plaintiff submitted a grievance complaining of the pain and lack of medical treatment. (Doc. 6-1, pp. 13-14). These allegations establish that Plaintiff had an objectively serious medical need, at least at this stage. *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015) (noting that pain alone can be an objectively serious medical condition); *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008) (same).

Plaintiff has also satisfied the subjective component of the inquiry with respect to his allegations against Wexford. The Seventh Circuit has held that a corporate entity violates an inmate's constitutional rights, in this case deliberate indifference to Plaintiff's serious medical needs, only when it has a policy that creates conditions that infringe upon an inmate's constitutional rights. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Here, Plaintiff has alleged that Wexford maintains a policy of denying medical attention to inmates who complain of effects from head trauma or injuries to the head as a means of saving costs. Plaintiff further alleges that he made such a treatment request, but it was ignored pursuant to that policy. Plaintiff has therefore stated a colorable claim against Wexford.

Conversely, Plaintiff's allegations fail to state a claim against John Doe 1. Plaintiff merely alleges that John Doe 1 acts under color of state law to provide medical care to inmates at Menard, that he acts pursuant to the practice and custom of IDOC and that he was "deliberately

indifferent to [Plaintiff's] medical needs when *employees of Wexford Health Services Inc.* ignored [Plaintiff's] request for medical care." (Doc. 6, p. 13) (emphasis added). It is well established that the doctrine of *respondeat superior* is not applicable to § 1983 actions, and Plaintiff has not alleged that John Doe 1 is "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Plaintiff's allegations against John Doe 1 extend no further than to claim that he is liable because he supervised people who caused a constitutional violation. This is not enough to state a claim.

For these reasons, Count 4 will proceed against Wexford and will be dismissed without prejudice as against John Doe 1.

### Illinois Department of Corrections

Plaintiff cannot maintain his suit against IDOC because it is a state governmental agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same). For this reason, IDOC will be dismissed from this action with prejudice. Similarly, although Plaintiff seeks to sue the individual defendants in both their official and individual capacities, per *Will*, and because Plaintiff has not requested injunctive relief, none of the claims allowed to proceed in this action will proceed against any of the defendants in their official capacities, except as otherwise noted.

### Identification of Unknown Defendant

Plaintiff will be allowed to proceed with Count 3 against John Doe 2. However, this defendant must be identified with particularity before service of the Amended Complaint can be made on him. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, the current warden of Menard is not currently named as a defendant in this action. The Clerk will therefore be directed to add the current warden, Jacqueline Lashbrook, in her official capacity only, and she shall be responsible for responding to discovery aimed at identifying this unknown defendant. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of John Doe 2 is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Amended Complaint.

### Pending Motions

Plaintiff has filed a Motion to Appoint Counsel (Doc. 3), which is hereby **REFERRED** to United States Magistrate Judge Reona J. Daly.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **BUTLER**

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **GODINEZ** and **ANDERSON**. **COUNT 2** is **DISMISSED** without prejudice as against **BENTON** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **HOF** and

**JOHN DOE 2**, identified in the Amended Complaint as a placement officer at Menard, and **JACQUELINE LASHBROOK** (official capacity only), who the **CLERK** is directed to **ADD** as a defendant in this case so that she may participate in discovery aimed at identifying John Doe 2 with particularity.

**IT IS FURTHER ORDERED** that **COUNT 4** shall **PROCEED** against **WEXFORD HEALTH SERVICES. COUNT 4** is **DISMISSED** without prejudice as against **JOHN DOE 1** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **BENTON** and **JOHN DOE 1** are dismissed from this action without prejudice for failure to state a claim upon which relief may be granted, and the **ILLINOIS DEPARTMENT OF CORRECTIONS** is dismissed from this action with prejudice pursuant to the Eleventh Amendment and *Will*, 491 U.S. at 71.

**IT IS ORDERED** that as to **COUNTS 1, 2, 3** and **4**, the Clerk of Court shall prepare for Defendants **BUTLER, GODINEZ, ANDERSON, HOF, WEXFORD HEALTH SERVICES, LASHBROOK** (official capacity only) and **JOHN DOE 2 (once identified)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by

Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendant John Doe 2 until such time as Plaintiff has identified him by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings, including a decision on the pending Motion to Appoint Counsel (Doc. 3) and a plan for discovery aimed at identifying John Doe 2 with particularity. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: June 29, 2017**

                                                           s/STACI M. YANDLE
                                                           **U.S. District Judge**