IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SEAN ARNOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-cv-79-SMY-RJD |
| | ) | |
| KIMBERLY BUTLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Sean Arnold, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). Plaintiff alleges that the defendants failed to protect him from an attack by another inmate and were deliberately indifferent to his serious medical needs arising from the attack. Following threshold screening, Plaintiff has proceeded on the following claims:

Count 1: Butler failed to protect Plaintiff from a violent attack by his cellmate in violation of the Eighth Amendment after receiving a grievance notifying her of potential danger to Plaintiff.

Count 2: Godinez and Anderson failed to protect Plaintiff from a violent attack by his cellmate in violation of the Eighth Amendment by denying a grievance from him requesting protective custody.

Count 3: Hof and John Doe 2 failed to protect Plaintiff from a violent attack by his cellmate after Plaintiff informed them of the danger he faced, in violation of the Eighth Amendment.

Count 4: Wexford showed deliberate indifference to Plaintiff's serious medical need involving injuries to his head in violation of the Eighth Amendment.

This case is now before the Court on the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Wexford Health Sources, Inc. ("Wexford") (Doc. 51). Plaintiff filed a Response (Doc. 69). Also before the Court are Plaintiff's Motions for Summary Judgment (Docs. 36 and 37), to which Defendants filed Responses (Docs. 39 and 45). For the following reasons, both parties' motions are **DENIED.**

### **Wexford's Motion for Summary Judgment for Failure to Exhaust**

In support of its motion, Wexford contends that Arnold failed to file a grievance within 60 days of the initial incident and that the grievance he ultimately filed made no reference to Wexford Health Sources. Arnold argues that he timely filed a grievance on April 20, 2015 and made specific reference to at least two Wexford employees.

Arnold attached the April 20, 2015 grievance to his Complaint (Doc. 1-1 at 10-11). In the grievance, he asserts that he was stabbed in the head and face with a jailhouse weapon, and beaten continuously in the head with a fan on February 24, 2015 (*Id*. at 10). The nurse treated his wounds on that date, but did not address his head trauma (*Id*.). He was never tested for concussion, nor given a CT-scan to test his head for injury (*Id*.). He sent requests to the healthcare unit for two months to be seen for constant headaches and memory loss (*Id*. at 11). He was having trouble processing information (*Id*.). He gave Nurse Etrin his request to be seen by health care, but was not called to sick call (*Id*.). He also sent a request to Dr. Trost, the Health Care Administrator, and informed him that he had been requesting medical attention and had not received any (*Id*.). The relief requested was to be seen by a doctor and to be given a CT-Scan to reveal what is wrong with his head.

On June 4, 2015, the counselor responded that the Health Care Unit had been contacted regarding Arnold's grievance and that they had seen him three times since the grievance was filed. The counselor instructed that if he continued to have issues, he should submit a sick call

request and that a request slip was attached for his use (*Id*.). Arnold was transferred from Menard to Hill Correctional Center on July 29, 2015 (*Id.* at 8).

Arnold sent the grievance to the Administrative Review Board ("ARB"). It was denied by the ARB because he had failed to include copies of the Grievance Officer's and Chief Administrative Officer's responses to the appeal (*Id*. at 44). Arnold re-submitted the grievance to the ARB explaining that he had been transferred and could not get the responses (*Id*. at 39). On September 17, 2015, the ARB reviewed Arnold's appeal a second time and denied it because it was not submitted within 60 days of the incident (*Id*. at 34).

## Legal Standards

### *Summary Judgment*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In deciding a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## *Exhaustion Requirements under the PLRA*

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that § 1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense and the defendant bears the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006).

The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. See *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id*. at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). If a plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

## *Exhaustion Requirements under Illinois Law*

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. § 504.810(b). The grievance officer is required to advise the CAO at the facility in writing of the findings on the grievance. *Id*. § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id*. § 504.830(d). An inmate may

appeal the decision of the CAO in writing within 30 days to the ARB for a final decision. *Id*. § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate's administrative remedies are not exhausted until the appeal is ruled on by the ARB. *See Id*. The ARB shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances. *Id*. § 504.850(f).

Additionally, an inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id*. § 504.840. If, after receiving a response from the CAO, an offender feels the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision. *Id*. § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but rather on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed. Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the inmate, he is deemed to have exhausted. *Id*. However, an inmate forfeits the grievance process when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

## Discussion

After reviewing the parties' briefs, the Court has determined that an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), is not necessary. Arnold maintains

that he was not required to file his grievance within 60 days of the attack because the subject of his grievance was not the attack, but rather the lack of medical care, which was a continuing violation. When a continuing violation occurs, the plaintiff can file a grievance at any time, as long as the violation continued. The Court finds that the alleged violations regarding lack of medical care continued after February 14, 2015. Therefore, Arnold's grievance filed on April 20, 2015 was timely.

Wexford also argues that the grievance makes no mention of Wexford Health Sources, nor does it describe any conduct, policy or procedure that could be interpreted as that of Wexford. Significantly, however, Arnold's grievance specifically mentions at least two medical professionals by name, Nurse Etrin and Dr. Trost, and clearly states that he was being denied medical treatment.

The PLRA's exhaustion requirement was designed to afford prison officials a chance to address inmate complaints internally, prior to the filing of federal litigation. *See, e.g., Kaba*, 458 F.3d at 684 (citation omitted). In other words, the purpose of the grievance is to provide prison officials a "fair opportunity" to address an inmate's complaint. *Maddox v. Love*, 655 F.3d 709, 713 (7th Cir. 2011). Indeed, the Seventh Circuit has consistently reminded district courts that "all that the PLRA requires" is that a grievance alert "the prison to the nature of the wrong for which redress is sought," *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (citation omitted), and afford prison officials an opportunity to respond, *see Pavey v. Conley*, 663 F.3d at 905-06.

Plaintiff's April 20, 2015 grievance certainly provided the institution and Wexford with a "fair opportunity" to respond to Plaintiff's complaints regarding his medical treatment, or lack thereof. The grievance alerted prison officials to the alleged problem with the healthcare unit and afforded prison officials an opportunity to examine whether Wexford's policies or practices

were the cause of Plaintiff's complaints regarding his treatment.  As such, Plaintiff's April 20, 2015 grievance was sufficient to exhaust his claim against Wexford, and Wexford's Motion for Summary Judgment is **DENIED**.

### Plaintiff's Motions for Summary Judgment

Arnold's first motion (Doc. 36) seeks summary judgment against Wexford on the bases that (1) Defendants do not have qualified immunity, (2) Plaintiff has exhausted administrative remedies, (3) Wexford is sued in individual capacity and not official capacity, and (4) Plaintiff's claims are not barred by the statute of limitations.  Plaintiff requests $1,000,000 in compensatory damages and $1,000,000 in punitive damages from Defendant Wexford.

Arnold's second motion (Doc. 37) asks the Court to grant summary judgment against the IDOC Defendants because (1) Defendants do not have qualified immunity and (2) Plaintiff has exhausted administrative remedies.  He requests $250,000 in compensatory damages and $250,000 in punitive damages from each defendant, jointly and severally.

Defendants correctly note that Arnold may not rely upon his Complaint allegations for summary judgment, but rather must establish that a reasonable fact-finder could not find for the defendants after reviewing the record as a whole.  Arnold has failed to demonstrate how or why there is no genuine dispute as to any material fact and to cite to any information in the record that would substantiate his requests.

Defendants have filed Answers to Plaintiff's Complaint denying many of the factual allegations asserted.  Thus, genuine issues of material fact exist prohibiting summary judgment. Accordingly, Plaintiff's Motions for Summary Judgment (Docs. 36 and 37) are **DENIED**.

**IT IS SO ORDERED.**

**DATED:  February 20, 2018**

                                        **s/ Staci M. Yandle**
                                        **STACI M. YANDLE**
                                        **United States District Judge**